HALL, Judge.
Mrs. Vermia T. Mamola sued Allstate Insurance Company, the public liability insurer of Mrs. Marian D. Eskine, for damages for personal injuries sustained by her in an intersectional collision involving the automobile - she was driving and an automobile driven by Mrs. Eskine. Mrs. Ma-mola’s husband, George R. Mamola, joined in the suit claiming reimbursement for his wife’s medical and hospital expense and for *415 damage to the community automobile involved in the collision. The Trial Judge found both drivers at fault and dismissed plaintiffs’ suit. Plaintiffs appealed.
The accident occurred about 5:30 P.M. April 24th, 1964, at the intersection of two roadways within the confines of the parking area of the Lakeside Shopping Center in Jefferson Parish. Mrs. Mamola, accompanied by her three or four year old daughter, was driving her car in a westerly direction on a parking area roadway which runs in an east-west direction adjacent to the front of the J. C. Penny Co. store. The car driven by Mrs. Eskine, Allstate’s insured, was proceeding in a southerly direction on a roadway which runs in a north-south direction adjacent to the west side of the store. The two roadways intersect at right angles at the south-west comer of the store building.
The roadways within the parking area are marked and traffic thereon is controlled by signs apparently placed and maintained by the Shopping Center. On the date of the accident there was a “Yield” traffic sign at the intersection which faced Mrs. Mamola as she drove west in front of the store. The north-south roadway on which Mrs. Eskine was proceeding was uncontrolled and Mrs. Eskine had the right of way.
The collision between the two vehicles took place approximately in the center of the intersection. The car driven by Mrs. Eskine rammed into the right side of Mrs. Mamola’s car striking it between the right front fender and door. Both cars locked together and skidded diagonally into a third car driven by a Mr. Noel Treadaway which had stopped at a stop sign prior to entering the intersection from the west.
In his written “Reasons for Judgment” the Trial Court said:
“ * * * The Court is of the opinion that Mrs. Mamola was negligent in her operation of the plaintiff-vehicle by failing to obey a right-of-way sign and proceeding into the intersection without making certain it was safe to do so. The Court is of the opinion that there was also negligence on the part of the defendant driver for driving in excess of the speed limit there. The Court concludes that the plaintiffs cannot recover, because of Mrs. Mamola’s negligence * * * ”
The record fully substantiates the Trial Court’s findings and conclusions. It leaves no doubt that the defendant driver, Mrs. Eskine, was travelling between 30 and 35 miles per hour, the speed limit being 15 miles per hour on all of the roadways. Whether or not Mrs. Mamola first stopped at the “Yield” sign is immaterial, since it is clear that she proceeded into the intersection without making certain that it was safe to do so.
In argument before us, appellants conceded negligence on the part of Mrs. Ma-mola. They rely entirely on the doctrine of “last clear chance.”
A litigant relying upon the doctrine of last clear chance has the burden of proving all facts and circumstances essential to its application, among them being proof that the person against whom the doctrine is invoked could have avoided the accident with the exercise of reasonable care. (See Scott v. Glazer, La.App., 164 So.2d 185 and cases there cited)
The record reveals that there was no obstruction to the view of either driver and; that Mrs. Eskine could or should have seen Mrs. Mamola’s car when it first pulled into' the intersection. Therefore whether Mrs. Eskine could have avoided the accident depends upon the distance her car was from' the intersection when Mrs. Mamola drove-out into it.
Mrs. Mamola testified that she brought her car to a stop in obedience to the “Yield”' sign; that before proceeding into the intersection she looked to her right and saw the Eskine car about a block away. She *416 later estimated the distance from the witness chair to the rear of the court room •at 40 feet (the actual measured distance is 42 feet) and testified that Mrs. Eskine was 2y2 court room lengths away when she first saw it. This would make a distance from 100 to 105 feet.
Mr. Noel Treadaway, the driver of the third car which had stopped before entering the intersection from the west, testified "that Mrs. Eskine was a little over half a block away when Mrs. Mamola entered the intersection. He later estimated the distance at being 30 to 35 feet more than the 'length of the court room, which would make it about 77 feet. He also testified that Mrs. Eskine applied her brakes when she was 12 or 15 feet away from Mrs. Ma-mola’s car.
Mrs. Jane Wiemann, a passenger in the 'Treadaway car, testified that Mrs. Eskine was half a block away when Mrs. Mamola •entered the intersection.
Miss Marjorie M. Viegas, another Tread-.away passenger, testified that Mrs. Eskine was 2 or 3 car lengths away (40 to 60 feet) from the intersection when Mrs. Mamola ■entered it.
Mrs. Eskine testified that she herself was entering the intersection at the time Mrs. Mamola passed the “Yield” sign and that Mrs. Mamola’s car struck hers. The 'Trial Judge stated for the record that he did not believe Mrs. Eskine’s version of 'how the accident happened,- and neither do •we.
Thus it is seen that the testimony with respect to how far Mrs. Eskine was from the intersection when Mrs. Mamola entered it varies from a block to 2 or 3 car lengths (40 to 60 feet).
The record shows that the collision took •place at approximately the center of the intersection and that the Mamola car was travelling about 10 miles per hour. The record does not reveal the width of the intersection but we may assume that Mrs. .Mamola had proceeded between 10 and 15 feet into the intersection before being hit. Simple mathematical calculations lead to the conclusion that if Mrs. Eskine had been even as much as half a block away (150') in order for the accident to have happened she would have to have been travelling at a very minimum of 50 miles per hour, a practically impossible speed to attain within the confines of a parking area. Certain it is that Mrs. Eskine was closer than that when Mrs. Mamola entered the intersection.
Mrs. Mamola’s final estimate of the distance was 100 to 105 feet; Mr. Treadaway’s final estate was 77 feet; the estimate of Miss Viegas was 40 to 60 feet. We are convinced that Mrs. Eskine was something less than 100 feet away when Mrs. Mamola first entered the intersection. If she applied her brakes as testified by plaintiffs’ witness, Noel Treadaway, she was considerably less than 100 feet way.
All disinterested witnesses agree that Mrs. Eskine was travelling between 30 and 35 miles per hour. According to Blash-field’s table (Cyclopedia of Automobile Law and Practice Vol. 9C, § 6237, p. 413) the stopping distance at 30 miles per hour is 73 feet, and at 35 miles per hour it is 94 feet. According to the table in Volume 14 of the Tulane Law Review (p. 503) the stopping distance under average conditions is 83 feet at 30 miles per hour and 107.9 feet at 35 miles per hour. It is our opinion on the whole that appellants have not sustained the burden of proving that Mrs. Eskine could have avoided the accident. She did not in our opinion have a clear last chance to do so.
In this connection it is pertinent to say, although the authorities do not seem to be in entire agreement, that in our opinion the question is not whether Mrs. Eskine could have avoided the accident had she been travelling at a reasonable rate of speed, but whether she could have avoided the accident travelling at her then actual rate of 30 to 35 miles per hour. (See Prosser on Torts, Second Edition, pp. 290, 295; Restatement of the Law of Torts *417 (1965) § 479, pp. 533-534; 38 Am.Jur. § 218, pp. 903-904; Vol. 65A C.J.S. Negligence § 137(5), p. 160)
In conclusion it is our opinion that it was Mrs. Mamola rather than Mrs. Eskine who had the last clear chance to avoid the accident. She could easily have done so by simply remaining at her place of safety by the “Yield” sign.
For the foregoing reasons the judgment appealed from is affirmed; costs of this appeal to be borne by plaintiffs-appellants.
Affirmed.